# EXHIBIT A

**SUMMONS**
*(CITACION JUDICIAL)*

7796303

**SUM-100**

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
12/6/2024 8:26:04 AM

Clerk of the Superior Court
By V. Bahena        ,Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COUNTY OF SAN DIEGO; SAN DIEGO CHILD WELFARE SERVICES; CITY OF ESCONDIDO;
ESCONDIDO POLICE DEPARTMENT; CITY OF SAN DIEGO; (continued on attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JANE DOE

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* SAN DIEGO SUPERIOR COURT

330 W. Broadway San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):*        **24CU026841C**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mario Iskander, Esq,  304 ½ Main Street Newport Beach, CA 92661    Tel. (760) 909-0647    Email: mario@iskanderlaw.com

DATE:
*(Fecha)* December 9, 2024

Clerk, by
*(Secretario)*    V. Bahena                , Deputy
*(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [  ] as an individual defendant.
2. [  ] as the person sued under the fictitious name of *(specify):*
3. [✗] on behalf of *(specify):*  County of San Diego

under: [  ] CCP 416.10 (corporation)        [  ] CCP 416.60 (minor)
[  ] CCP 416.20 (defunct corporation)       [  ] CCP 416.70 (conservatee)
[  ] CCP 416.40 (association or partnership) [  ] CCP 416.90 (authorized person)
[✗] other *(specify):*  County

4. [✓] by personal delivery on *(date):*  5/7/2025

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**
EXHIBIT A

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Madison Padilla
COSD BOARD OF SUPERVISORS
2025 MAY 7 PM 1:11
Office Assistant
centrocrney
in person

EXHIBIT A

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| JANE DOE v COUNTY OF SAN DIEGO | 24CU026841C |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

[ ] Plaintiff  [x] Defendant  [ ] Cross-Complainant  [ ] Cross-Defendant

Continued from Summons [SUM-100]:

SAN DIEGO POLICE DEPARTMENT; TAMARA ALVAREZ; ARLENE HERNANDEZ; RICHARD RIVERA; THERESE RUIZ; MICHAEL GIDDENS; and DOES 1 through 20, inclusive,

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**
EXHIBIT A

Mario Iskander, SBN #327025
Justice Law Group
304 ½ Main Street
Newport Beach, CA 92661
Tel. (760) 909-0647
Email: mario@iskanderlaw.com

Attorney for Plaintiff, JANE DOE

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
12/6/2024 8:26:04 AM

Clerk of the Superior Court
By V. Bahena          ,Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN DIEGO

JANE DOE,

           Plaintiff,

    v.

COUNTY OF SAN DIEGO; SAN DIEGO
CHILD WELFARE SERVICES; CITY OF
ESCONDIDO; ESCONDIDO POLICE
DEPARTMENT; CITY OF SAN DIEGO;
SAN DIEGO POLICE DEPARTMENT;
TAMARA ALVAREZ; ARLENE
HERNANDEZ; RICHARD RIVERA;
THERESE RUIZ; MICHAEL GIDDENS; and
DOES 1 through 20, inclusive,

           Defendants.

Case No:      24CU026841C

COMPLAINT FOR DAMAGES FOR:

1. FAILURE TO DISCHARGE A
   MANDATORY DUTY IN VIOLATION OF
   GOV. CODE § 815.6;
2. VIOLATION OF FEDERAL CIVIL RIGHTS
   (42 U.S.C. § 1983);
3. CONSPIRACY TO VIOLATE FEDERAL
   CIVIL RIGHTS (42 U.S.C. § 1983);
4. VIOLATION OF FEDERAL CIVIL RIGHTS
   (42 U.S.C. § 1986);
5. VIOLATION OF GOVERNMENT CODE §
   815.2;
6. VIOLATION OF CALIFORNIA CIVIL
   CODE § 51.2

Demand for Jury Trial

COMES NOW, JANE DOE, who complains and alleges as follows:

## PARTIES

1.    Plaintiff, Jane Doe, is an individual residing in the County of San Diego. At all relevant times mentioned herein, Jane Doe was a minor.

COMPLAINT FOR DAMAGES          EXHIBIT A          - 1

2. Defendant, COUNTY OF SAN DIEGO is a governmental entity authorized by the State of California. Plaintiff is informed, believes and thereon alleges that Defendant, SAN DIEGO CHILD WELFARE SERVICES is an independent department of the COUNTY OF SAN DIEGO which provides services for the safety and welfare of children in the County of San Diego.

3. Defendants TAMARA ALVAREZ and ARLENE HERNANDEZ are individuals employed by the County of SAN DIEGO CHILD WELFARE SERVICES Division. Plaintiff is informed and believes and on that basis alleges that said defendants are residents of the County of San Diego.

4. Defendant, CITY OF ESCONDIDO is a municipality within the State of California. Plaintiff is informed, believes, and thereon alleges that Defendant, ESCONDIDO POLICE DEPARTMENT is an independent department or division of the CITY OF ESCONDIDO.

5. Defendants RICHARD RIVERA and THERESE RUIZ are employed by the City of ESCONDIDO POLICE DEPARTMENT. Plaintiff is informed and believes and on that basis alleges that said defendants are residents of the County of San Diego.

6. Defendant, CITY OF SAN DIEGO, is a municipality within the State of California. Plaintiff is informed, believes, and thereon alleges that Defendant, SAN DIEGO POLICE DEPARTMENT is an independent department or division of the CITY OF SAN DIEGO.

7. Defendant, MICHEAL GIDDENS is employed by the City of SAN DIEGO POLICE DEPARTMENT. Plaintiff is informed and believes and on that basis alleges that said defendant is a resident of the County of San Diego

8. Defendants DOES 1 through 20 are named as fictitious defendants who have participated with, or acted in concert with, one of more of the defendants, or who have acted on behalf of or as agents, servants or employees of one or more of the defendants named herein, but whose true names and capacities, whether individual, corporate or otherwise, are presently unknown to Plaintiff. Plaintiff is informed and believes and thereon alleges that defendants DOES 1 through 20 have directly or indirectly participated in and are responsible for the acts .and omissions that are more specifically described herein. Because Plaintiff is presently uninformed as to the true names and capacities of defendants DOES 1 through 20, Plaintiff sues them herein by fictitious names, but will seek leave to amend this Complaint when their true names and capacities are discovered.

COMPLAINT FOR DAMAGES                    EXHIBIT A                                      - 2

**COMMON ALLEGATIONS**

9.     Plaintiff, JANE DOE is a female born on December 14, 2004 and at relevant times mentioned herein was a minor during the events of rape, sexual abuse and violent assaults her substantially caused by the willful misconduct and dereliction of duty of the defendants.

10.     On or about October 31, 2020, Jane Doe, then 15 years old, was abducted from the home of her custodial parent, Pasquale Buono, in San Diego, California by her non-custodial mother, Khalilah Knackstedt, aka Khalilah Buono, aka Khalilah Davis and aka Khalilah Fuller ("Khalilah"). Khalilah and Jane Doe's biological father, Pasquale Buono, divorced when Jane Doe was one year old and the Family Court denied Khalilah all custodial and visitation rights based on her history of violence, criminal acts, and mental instability. The Family Court further issued restraining order against Khalilah prohibiting her from coming near Jane Doe or commencing legal proceedings against Jane Doe's father without first obtaining leave of the family court. These orders were issued due to Khalilah having stabbed Jane Doe's father with a knife, among other violent assaults, and having made multiple false reports to police and Child Welfare Services against Jane Doe's father. The table below lists the criminal cases filed against Khalilah by the San Diego District Attorney:

| Case No. | Party Name Matches | Birth Year | Case Location | Case Type | Date Filed |
|---|---|---|---|---|---|
| D499699 | Knackstedt, Khalilah | 1983 | San Diego | Criminal | 10/19/2006 |
| D499699 | Knackstedt, Khalilah E | 1983 | San Diego | Criminal | 10/19/2006 |
| D499699 | Knackstedt, Khalilah Esther | 1983 | San Diego | Criminal | 10/19/2006 |
| M189991 | Knackstedt, Khalilah | 1983 | San Diego | Criminal | 09/25/2014 |
| M189991 | Knackstedt, Khalilah E | 1983 | San Diego | Criminal | 09/25/2014 |
| M189991 | Knackstedt, Khalilah Esther | 1983 | San Diego | Criminal | 09/25/2014 |
| S278656 | Knackstedt, Khalilah | 1983 | South County | Criminal | 04/15/2015 |
| S278656 | Knackstedt, Khalilah E | 1983 | South County | Criminal | 04/15/2015 |
| S278656 | Knackstedt, Khalilah Esther | 1983 | South County | Criminal | 04/15/2015 |
| SCN399384 | Knackstedt, Khalilah Esther | 1983 | North County | Criminal | 04/26/2019 |
| CN404446 | Knackstedt, Khalilah | 1983 | North County | Criminal | 09/04/2019 |
| CN404446 | Knackstedt, Khalilah E | 1983 | North County | Criminal | 09/04/2019 |
| CN404446 | Knackstedt, Khalilah Esther | 1983 | North County | Criminal | 09/04/2019 |
| D499699 | Knackstedt, Khalilah | 1983 | San Diego | Criminal | 03/12/2021 |
| D499699 | Knackstedt, Khalilah E | 1983 | San Diego | Criminal | 03/12/2021 |
| D499699 | Knackstedt, Khalilah Esther | 1983 | San Diego | Criminal | 03/12/2021 |
| SCN424787 | Knackstedt, Khalilah Esther | 1983 | North County | Criminal | 070/1/2021 |

One of the above cases concerned a prior abduction of Jane Doe by Khalilah. After Jane Doe's father notified the police, the police were able to locate Jane Doe in an apartment procured by Khalilah in Imperial Beach, California. The police went into the residence, executed the restraining order, arrested Khalilah for abduction, and returned Jane Doe safely to her custodial parent soon after learning of Khalilah's location. This action concerns a second abduction of Jane Doe by Khalilah commencing on or about October 31, 2020. Khalilah took Jane Doe, then 15 years old, to an apartment she was sharing with her boyfriend, Thomas Davis. Over the course of the next two months, Thomas Davis raped Jane Doe on several occasions after beating her severely at the apartment. Jane Doe fled from the apartment on or about January 16, 2021 after approximately two and half months when Khalilah assaulted her daughter with a knife and threatened to slit her throat. The rapes and physical assaults should have been avoided but for the willful failure of the Escondido Police Department, San Diego Police Department and County of San Diego Welfare Services Department to perform their legal, mandatory duty to enforce a restraining order against Khalilah. Jane Doe's father made known to the defendants, and each of them, the existence of the family court restraining order against Khalilah, the family court's award of sole custody to Jane Doe's father and Khalilah's history of criminal offenses and violence. Despite the repeated requests of Jane Doe's father from the defendants to enforce the restraining order and remove Jane Doe from the custody of her mother, the defendants willfully refused to enforce the existing order, despite the repeated requests of Jane Doe's father This willful failure was a substantial factor in the sexual and physical assaults of Jane Doe.

11.    In early November 2020, Jane Doe's father and custodial parent reported Khalilah's abduction of Jane Doe to the San Diego Police Department and County of San Diego Child Welfare Services ("CWS"). Jane Doe's father requested their assistance in locating and retrieving Jane Doe, and requested that criminal charges be filed against Khalilah for violation of the restraining order and abducting Jane Doe.

12.    Information came to light several days later that Khalilah had taken Jane Doe to Escondido, California to live with her in the apartment of Khalilah's boyfriend, Thomas Davis. The San Diego Police Department, Escondido Police Department, and CWS initially told Jane Doe's father that they would enter the apartment, retrieve Jane Doe, and arrest Khalilah. Jane Doe's father urged the defendants to act promptly because Khalilah had a history of violence and mental instability placing Jane Doe at risk of harm. He also expressed concern that Jane Doe was living in the apartment of an

adult male who was not a relative of Jane Doe. The police advised Jane Doe's father not to take self-help action.

13.     After initially telling Jane Doe's father that they would retrieve his daughter from the apartment of Thomas Davis in Escondido, CA, the Escondido Police later called Jane Doe's father and said that CWS and Escondido Police had visited Khalilah at the apartment on or about November 15, 2020 and that no arrest had been made. Instead the Escondido Police told Jane Doe's father that CWS and the police made the decision to leave Jane Doe in the custody of her mother and ignore the restraining order. Khalilah told the police that Jane Doe had obtained a temporary restraining order against Jane Doe's father in family court.  When the police questioned Jane Doe about the TRO, she said that her mother had taken her to the court and filed the restraining order on her behalf. She said that she did not want a restraining order. She said that no one listened to her during the application process. Despite these statements by Jane Doe to the police indicating that the TRO against Jane Doe's father an abuse of process by Khalilah and  despite the existing restraining order against Khalilah, the police and CWS decided to leave Jane Doe with Khalilah.

14.     Jane Doe's father told the Escondido police, San Diego police and CWS  that he had no knowledge of any such restraining order and doubted that his 15 year old daughter would seek a restraining order against him as there was no basis to do so.   CWS  argued with Jane Doe's father that Jane Doe would be 'better off' with her mother than Jane Doe's father and he needed to obey the TRO against him and make his case in court.  Jane Doe's father reiterated that he had never served with papers or informed about any court proceeding brought by Jane Doe or anyone else for a restraining order.  Despite the many requests of Jane  Doe's father to the Escondido Police Department, San Diego Police Department and CWS to execute the restraining order entered against Khalilah regardless of the TRO entered against him, they refused and continued to refuse to enforce the restraining order.

15.     While the Defendants refused to enforce the restraining order, Jane Doe continued to live in the apartment of Jame Davis with her mother, Khalilah,  she was subjected to sexual, physical, verbal and emotional abuse by both Khalilah and Thomas Davis.  Thomas Davis made sexual advances toward Jane Doe who refused and severely beaten by Thomas Davis who then raped Jane Doe, knowing that she was a minor. Jane Doe thereafter complied with Thomas Davis's requests for sexual favors. Thomas Davis and Khaliah threatened to cause severe physical harm to Jane Doe if she were ever to report them.

16.     After Jane Doe's father learned of the TRO, he hired an attorney who investigated and discovered that Jane Doe had allegedly filed a  request for a Family Domestic Violence Restraining

Order against him on November 9, 2020, (approximately ten days after Khalilah was abducted by Khalilah),  in San Diego Superior Court, Case No. 20FDV05xxxx (last four digits blocked to protect Jane Doe's identity). The Court issued a temporary restraining order ex parte  based on the petition papers on November 9, 2020 without a hearing and set the matter for trial on a (permanent) restraining order on December 4, 2020.  On November 24, 2020,  Jane Doe's father filed an ex parte application to dissolve the TRO and provided the family court with the evidence of Khalilah's criminal history, restraining orders and history of making false complaints against him.  On  November 25, 2025, the Court entered an Amended Order dissolving the TRO. The matter was still set for hearing on December 4, 2020.

17.    On December 4, 2020, the family court reviewed the status of the case noting that the TRO had been dissolved and that the matter was on calendar for a hearing on a denied restraining order, Jane Doe's father and attorney appeared by phone.  The Escondido Police picked Giulietta and her mother up from the apartment and they appeared telephonically from the Escondido Police station.  The denied restraining order matter was continued for an evidentiary to January 8, 2021.  On January 8, 2021, the matter was continued to January 11, 2021. On January 11, 2021, the hearing was continued to June 9, 2021.  On one of the foregoing dates, the  Court learned that Jane Doe was still in the custody of Khalilah. When the Court learned this information it instructed the Escondido Police not to allow Khalilah to maintain custody. Despite this admonition, the Escondido Police drove Khalilah and Jane Doe back to the apartment of Thomas Davis after the hearing.  On June 9,2021, Jane Doe did not appear, and the petition was dismissed.

18.    Despite the order dissolving the TRO on November 25, 2020, the Escondido Police Department, CWS and San Diego Police Departments decided they still would not enforce the restraining order against Khalilah despite the latter's history of criminal offenses, violence, and the fact that the Family Court granted her no custody rights. The Court in the family law petition matter brought by Giulietta did not issue a permanent restraining order. The fake or false restraining order was in effect November 9 to 25, 2020, (16 days).   Despite the admonition by the family court presiding over the denied restraining order case,  the Escondido Police willfully failed to enforce the  restraining order against Khalilah. This willful failure to perform a mandatory legal duty is evidenced by the fact that the Escondido Police drove Khalilah and Jane Doe back to the apartment of Jame Davis after the hearing leaving Jane Doe in the custody of Khalilah.

19. In addition to Jane Doe's rapes at the apartment where she lived with Khalilah, Jane Doe was subjected to multiple violent assaults due to the willful neglect of the defendants. On one occasion, Khalilah and Thomas Davis got into a fight at the apartment. Khalilah pulled knife on Thomas Davis and attacked. Thomas Davis defended himself, but he was cut by the knife. Escondido Police were called to the apartment due to the noise and disturbance. Upon questioning, Thomas Davis and Khalilah lied to the police, stating that someone was trying to break into Thomas Davis's car, that Thomas Davis confronted the thief who attacked him. Khalilah then came to the scene with a knife and accidentally cut Thomas Davis trying to drive the attacker away. The police did not question Jane Doe about the incident. She remained in Khalilah's custody despite the restraining order against Khalilah.

20. On or about January 16, 2021, Khalilah became enraged at Jane Doe and assaulted her because she was having sex with Thomas Davis. Khalilah held a knife against Jane Doe's neck and threatened to kill her. Jane Doe pushed Khalilah's arm away but Khalilah grabbed Jane Doe and through her to the ground where Jane Doe hit her had. Jane Doe was scared and ran out of the apartment to escape. Jane Doe ran to a neighbor's house who called the police. The Escondido Police picked Jane Doe up and took her to the station. The Escondido Police arrested Khalilah for the knife incident on or about January 16, 2021. Rather than informing Jane Doe's father, the custodial parent, of the incident and asking him to pick Jane Doe up from the police station, the Escondido Police consulted with CWS. CWS instructed the police to take Jane Doe to the Polinsky Children's Center in San Diego, a temporary shelter for children without homes. While at the Polinsky Center, CWS contacted Jane Doe's paternal aunt and asked her if she was willing to take custody of Jane Doe. CWS conditioned Jane Doe's release on the aunt's willingness to allow Khalilah to haver supervised visits. Jane Doe's aunt informed CWS that there was a restraining order barring Khalilah from having any contact with Jane Doe and that Khalilah was presently in jail for threatening to kill Jane Doe with a knife. CWS still made Jane Doe's release contingent on the aunt allowing Khalilah to have visits with Jane Doe. Upon being informed that CWS was going to release Jane Doe to her aunt, Jane Doe's father made an emergency application to the family court and obtained papers showing that Jane Doe should be released to hm. Jane Doe thereafter left the Polinsky Center and contacted a family member. Jane Doe's father was finally able to retrieve Jane Doe at a park in San Diego near the Polinsky Center on or about January 22, 2021 without ever receiving any aid or assistance from the defendants after Jane Doe was in Khalilah's custody for two and half months. The Escondido Police, San Diego Police and CWS each refused and continued to refuse to

enforce the restraining order against Khalilah. Their willful failure to perform their mandatory legal duties directly resulted in Jane Doe's rapes, beatings, and violent assaults.

21.    Plaintiff alleges that the claims in this action arise from sexual abuse of a minor as set forth in Code of Civil Procedure § 340.1and are therefore exempt from the claim presentation requirements of the Government Tort Claims Act, (Gov. Code, § 905(m)   Plaintiff, however,  presented a governmental tort claim to each of the Defendants:  County of San Diego, City of Escondido, and City of San Diego.  Each of those claims were rejected.

## FIRST CAUSE OF ACTION

### (Violation Of Government Code § 815.6 as to all Defendants)

22.    Plaintiff hereby incorporates by reference all preceding paragraphs as though set out in full herein.

23.    The California Tort's Claims Act provides a party with an independent legal basis to recover damages against a public entity for its failure to properly discharge a mandatory duty.

24.    Government Code section 815.6 provides "[where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of the kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

25.    Penal Code section 836(a) provides that [a] peace officer may arrest a person in obedience to a warrant, or, pursuant to the authority granted to him or her by Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, without a warrant, may arrest a person whenever any of the following circumstances occur: (1) The officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence. (2) The person arrested has committed a felony, although not in the officer's presence. (3) The officer has probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed."

26.    Penal Code section 836(c)(1) provides that "[w]hen a peace officer is responding to a call alleging a violation of a ... or restraining order issued . . . and the peace officer has probable cause to believe that the person against whom the order is issued has notice of the order and has committed an act in violation of the order, the officer shall, consistent with subdivision (b) of Section 13701, make a

lawful arrest of the person without a warrant and take that person into custody whether or not the violation occurred in the presence of the arresting officer..." (emphasis added.) If an officer has probable cause to believe that the restrained person had notice of the order and has disobeyed it, the officer must arrest the restrained person."

27.    Defendants, and each of them, had a mandatory duty to arrest Khalilah upon probable cause leading them to believe that she violated the restraining order issued against her pursuant to Penal Code section 836(c)(1). Pursuant to Government Code section 815.6, defendants, and each of them, had a duty to "exercise reasonable diligence to discharge [that] duty."

28. As set forth in paragraphs 9 - 20 above, defendants, and each of them, breached each of their mandatory duties by acting with deliberate indifference to the restraining order against Khalilah and refusing to take any action to enforce the restraining order by removing Jane Doe from Khalilah's custody, (following Khalilah's abduction of Jane Doe from her home in San Diego on or about October 31, 2020). This pattern of willful neglect and refusal to comply with a legal duty continued from October 31, 2024 to approximately January 22, 2021 when Jane Doe was rescued by her father. The period of abduction ended after Jane Doe escaped from the apartment where she had been held by Khalilah after Khalilah violently assaulted Jane Doe with a knife.   After Jane Doe was picked up by Escondido Police, the Escondido Police in conjunction with CWS who was consulted and provided direction to the Escondido Police, Jane Doe was taken to a CWS sponsored children's shelter where Jane Doe was able to escape and call a family member.  During this period of time, the Defendants, and each of them, were repeatedly placed on notice of the family court's restraining order against Khalilah by Jane Doe's father and demands were made to Defendants, and each of them, to enforce the restraining order because Jane Doe was in physical danger.  Each defendant was aware that Jane Doe was in the custody of Khalilah, in direct violation of the restraining order and were aware of Khalilah's criminal history yet they violated their  obligations under Penal Code section 836, and ignored their legal duties under Government Code section 815.6, placing Jane Doe in grave danger for her physical and emotional well-being.

29.    As a direct, proximate, and foreseeable result of defendants' refusal to the enforce the restraining order, plaintiff suffered sexual violence, rape, assaults, and severe physical and mental and

emotional pain, suffering and injury,  and other special and general damages, all in an amount to be proven and trial, as well as attorney's fees and costs as allowed by statute.

30.    Defendants, and each of their, failure to perform his, her, its mandatory duties under the law was a substantial factor in causing the harm to plaintiff alleged above.

31.    Plaintiff is informed and believes and thereon alleges that defendants, and each of them, in some other way breached other mandatory duties of which plaintiff is unaware. Plaintiff will seek leave of Court to amend this complaint at such time as plaintiff discovers the other conduct of said defendants constituting such liability.

### SECOND CAUSE OF ACTION

### (Violation Of  42 U.S.C. § 1983 as to all Defendants)

32.    Plaintiffs hereby incorporate by reference paragraphs 1 – 21, inclusive, and 23 – 31, inclusive, as though set forth in full herein.

33.    Plaintiff has a clearly established, federally protected, interest in life, liberty and property, and procedural and substantive due process right protected by the 14' Amendment to the United States Constitution, to be free from governmental actor's conduct that is deliberately indifferent to plaintiffs' constitutionally protected interests which "shocks-the conscience" of the courts.

34.    By engaging in the conduct set forth in paragraphs 9 – 20 above, the defendants, and their employees and/or agents, while acting under color of the law, the course and scope of their employment, and pursuant to the customs, policies, practices, wholly inadequate training and supervision of their department, deprived plaintiff of her rights and privileges secured by the United States Constitution and by other laws of the United States including those grounded in the Fourteenth Amendment's Due Process Clause, and or Equal Protection Clause to be free of state-created danger, in violation of 42 U.S.C. §1983, which caused plaintiff to suffer severe sexual, physical, and emotional injuries.  Plaintiff is further informed and believes and thereon alleges that the Defendants, and each of them, failed to adequately train their employees and/or agents how to respond to violations of family court restraining orders, obtain search warrants, and protect their citizens from known threats of danger.

---

COMPLAINT FOR DAMAGES                 EXHIBIT A                                      - 10

35.     By their conduct, defendants, and each of them, demonstrated a reckless disregard, conscious disregard or deliberate indifference to a known and obvious danger or risk posed by  Khalilah / Thomas Davis, and to the needs of plaintiff and by such indifference and conscious disregard enhanced the danger to plaintiff and made her more vulnerable to harm. Defendants, and each of their conduct rises to a level that shocks the conscience.

36.     As a direct, proximate, and foreseeable result of defendants' conduct, plaintiff suffered severe physical and mental and emotional pain, suffering and injury, as well as medical bills and expenses, and other special and general damages, all in an amount to be proven and trial, as well as attorney's fees and costs as allowed by statute.

37.     Moreover, the conduct of said defendants, and each of them, was done with deliberate indifference to plaintiff's physical safety, and were done intentionally, maliciously recklessly, sadistically, oppressively, outrageously, and with deliberate indifference and a reckless disregard of plaintiffs' constitutional rights. Plaintiff is are entitled to an award of punitive damages against said Defendants, and each of them, in an amount to be shown at trial.

38.     Plaintiff is informed and believes and thereon alleges that defendants, and each of them, are in some other way responsible for conduct of which plaintiff is unaware. Plaintiff will seek leave of Court to amend this complaint at such time as plaintiff discovers the other conduct of said defendants constituting such liability.

## THIRD CAUSE OF ACTION

### (Conspiracy to Deprive Person of Rights or Privileges

### in Violation Of  42 U.S.C. § 1983 as to all Defendants))

39.     Plaintiffs hereby incorporate by reference paragraphs 1 – 21, inclusive, paragraphs 23 – 31, inclusive, and paragraphs 33 – 38,  inclusive, as though set forth in full herein.

40.     42 U.S.C. §1985(2) prohibits two or more persons from conspiring for the purpose of impeding, hindering, obstruction, or defeating, in any manner, the due course of justice in any State, with the intent to deny to any citizen the equal protection of the laws, for lawfully enforcing, or attempting or enforce, the right of any person, to the equal protection to the laws.

41.     By engaging in the acts set forth in paragraphs 9 – 20 above, defendants, and each of them, while acting under the color of law and in the course and scope of their employment, did conspire to deprive plaintiff of her rights, privileges and immunities secured the Constitution of the United States, including the 14th Amendment's right to due process and equal protection under the laws, and did in fact deprive plaintiff, either directly or indirectly, equal protection of the laws, or of equal privileges and immunities under the laws, including the right to be free of state-created danger.

42.     As a direct, proximate, and foreseeable result of defendants' acts of conspiracy to deprive plaintiff of her rights or privileges, plaintiff suffered sexual violence, physical and mental and emotional pain, suffering and injury, as well as medical bills and expenses, and other special and general damages, all in an amount to be proven and trial, as well as attorney's fees and costs as allowed by statute.

43.     Moreover, as the conduct of said Defendants, and each of them, was done with deliberate indifference to plaintiff's physical safety, and were done intentionally, maliciously recklessly, sadistically, oppressively, outrageously, and with deliberate indifference and a reckless disregard of plaintiff's constitutional rights. Plaintiff is entitled to an award of punitive damages against said Defendants, and each of them, in an amount to be shown at trial.

44.     Plaintiff is informed and believes and thereon alleges that defendants, and each of them, are in some other way responsible for acts of conspiracy of which plaintiff is unaware. Plaintiff will seek leave of Court to amend this complaint at such time as plaintiff discovers the other conduct of said defendants constituting such liability.

### FOURTH CAUSE OF ACTION

#### (Neglect to Prevent Harm in Violation

#### of 42 U.S.C. § 1986 as to all Defendants)

45.     Plaintiffs hereby incorporate by reference paragraphs 1 – 21, inclusive, paragraphs 23 – 31, inclusive, paragraphs 33 – 38, inclusive, and paragraphs 40 – 44, inclusive, as though set forth in full herein.

46.     Pursuant to 42 U.S.C. §1986, every person who has knowledge of the wrongs conspired to be done, including but not limited to, a conspiracy to deprive others of their rights or privileges or

conspiracy to obstruct justice, and has the power to prevent or aid in preventing the commission of the same, but neglects or refuses so to do, shall be liable to the party injured for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

47.    At all times pertinent hereto, defendants and each of them, had the actual knowledge of a known and obvious danger posed by Khalilah / THOMAS DAVIS, and had knowledge of the conspiracy to obstruct justice and/or prevent persons in San Diego County, Escondido and San Diego, including plaintiff, from exercising her/his/its legal rights or privileges. Further, defendants and each of them, had the power to prevent the crimes and harm caused by Khalilah and THOMAS DAVIS from being committed, or prevent the other defendants from depriving plaintiff of her rights and privileges or prevent the obstruction of justice, but refused and neglected to prevent said wrongs from being committed and are therefore liable to plaintiff under Title 42 U.S.C. § 1986.

48.    By engaging in the conduct set forth in paragraphs 31-39 above, defendants and their employees and/or agents, while acting under color of the law, the course and scope of their employment, and pursuant to the customs, policies, practices, wholly inadequate training and supervision of their department, engaged in affirmative conduct that subjected plaintiffs to new or increased danger, and deprived plaintiff of her rights, privileges and immunities secured by the Constitution of the United States, including the 14th Amendments.

49.    Plaintiffs are further are further informed and believe and thereon allege, that the Defendants, and each of them, failed to adequately train its employees and/or agents on how to respond to violations of restraining orders, obtain search warrants, and protect its citizens from known threats of danger.

50.    As a direct, proximate, and foreseeable result of defendants' neglect to prevent harm, plaintiff suffered sexual and physical violence, severe physical and mental and emotional pain, suffering and injury, as well as incurred medical bills and expenses, and other special and general damages, all in an amount to be proven and trial, as well as attorney's fees and costs as allowed by statute.

51.    Moreover, as the conduct of said Defendants, and each of them, was done with deliberate indifference to plaintiffs' physical safety, and were done intentionally, maliciously recklessly, sadistically, oppressively, outrageously, and with deliberate indifference and a reckless disregard of

plaintiffs' constitutional rights. Plaintiff is entitled to an award of punitive damages against said Defendants, and each of them, in an amount to be shown at trial.

52.    Plaintiff is informed and believes and thereon allege that defendants, and each of them, are in some other way responsible for acts of which plaintiffs are unaware. Plaintiff will seek leave of Court to amend this complaint at such time as plaintiff discovers the other conduct of said defendants constituting such liability.

## FIFTH CAUSE OF ACTION

### (Violation of Government Code
### § 815.2 as to all Defendants)

45.    Plaintiffs hereby incorporate by reference paragraphs 1 – 21, inclusive, paragraphs 23 – 31, inclusive , paragraphs 33 – 38,  inclusive, paragraphs 40 – 44, inclusive, inclusive, as though set forth in full herein.

46.    Pursuant to Government Code § 815.2, subd. (a), a public entity is vicariously liable for the tortious conduct of its employees committed within the scope of employment under circumstances in which the employee would be personally liable for the conduct. The effect of this statute is to incorporate general standards of tort liability as the primary basis for respondeat superior liability of public entities.

47.    The Tort Claims Act (Gov. Code, § 810 et seq.) expressly denies a public entity the power to enact an ordinance abridging its statutory liabilities or expanding its statutory immunities (Gov. Code, § § 811.2, 811.8, 815). Furthermore, an employee of a public entity is liable for his torts to the same extent as a private person [Gov. Code, § 820, subd. (a)], and the public entity is vicariously liable for any injury which its employee causes (Gov. Code, § 815.2, subd. (a)) to the same extent as a private employer [Gov. Code, § 815, subd. (b)].

48.    A public entity's programs and services, viewed in their entirety, must be equally accessible to all persons.

49.     Defendants, and each of them, failed in such duty, by engaging in the conduct set forth in paragraphs 9 - 20, which deprived members of the public, including plaintiff, with due process and/or equal protection under the law.

50.     Defendants, and each of them, knew or should have known that Plaintiff's rights were being violated and/or that Plaintiff was being placed at risk of serious physical, sexual and emotional harm by failing to enforce the family court restraining order against Khalilah, rescue her from abduction by her non-custodial parent, and harboring a minor in the apartment of a non-family member adult male and otherwise grant her due process and/or equal protection under the law.

52.     As a direct, proximate, and foreseeable result of defendants' conduct, plaintiff suffered severe physical, sexual, mental and emotional pain, suffering and injury, as well incurred medical bills and expenses, and other special and general damages, all in an amount to be proven and trial, as well as attorney's fees and costs as allowed by statute.

53.     Plaintiff is informed and believes and thereon allege that defendants, and each of them, are in some other way responsible for acts of which plaintiff is unaware. Plaintiff will seek leave of Court to amend this complaint at such time as plaintiff discovers the other conduct of said defendants constituting such liability

### SIXTH CAUSE OF ACTION

#### (Violation of Civil Code § 51.2 as to all Defendants)

54.     Plaintiffs hereby incorporate by reference paragraphs 1 – 21, inclusive, paragraphs 23 – 31, inclusive, paragraphs 33 – 38, inclusive, paragraphs 40 – 44, inclusive, paragraphs 46 – 53, inclusive, as though set forth in full herein.

55.     California Civil Code § 51.2 provides that "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under § 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights

COMPLAINT FOR DAMAGES                    EXHIBIT A                    - 15

secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

56. The acts of defendants, and each of them, as set forth in paragraphs 9 20 above, constitute a violation of California Civil Code §51.2, and amount to a pattern or practice of conduct of acting with deliberate indifference to a known and obvious danger.

57. Defendants are is liable for the acts of each of their respective employees and/or agents pursuant to Cal. Gov. Code § 815.2.

58. As a direct, proximate, and foreseeable result of defendants' conduct, plaintiff suffered sexual and physical violence, severe physical and mental and emotional pain, suffering and injury, as well as incurred medical bills and expenses, and other special and general damages, all in an amount to be proven and trial, as well as attorney's fees and costs as allowed by statute.

59. Moreover, as the conduct of said Defendants, and each of them, was done with deliberate indifference to plaintiffs' physical safety, and were done intentionally, maliciously recklessly, sadistically, oppressively, outrageously, and with deliberate indifference and a reckless disregard of plaintiffs' constitutional rights. Plaintiffs are entitled to an award of punitive damages against said Defendants, and each of them, in an amount to be shown at trial.

60. Plaintiff is informed and believes and thereon alleges that defendants, and each of them, are in some other way responsible for acts of which plaintiffs are unaware. Plaintiff will seek leave of Court to amend this complaint at such time as plaintiff discovers the other conduct of said defendants constituting such liability.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a jury trial and for judgment against the Defendants, and each of them, as follows:

**FOR ALL CAUSES OF ACTION**

1. For past, present and future general damages in an amount to be determined at trial;

2. For past, present and future special damages, including but not limited to past, present and future lost earnings, economic damages and others, in an amount to be determined at trial;

3.    Any appropriate punitive or exemplary damages against Defendants, or any of them;

4.    Any appropriate statutory damages;

5.    For costs of suit;

6.    For interest as allowed by law;

7.    For attorney's fees and costs as allowed by statute.

8.    For such other and further relief as the court may deem proper.

Date: December 6, 2024                          *s/ Mario Iskander*                    /
                                                Mario Iskander, Esq. attorney for
                                                Plaintiff, JANE

## DEMAND FOR JURY TRIAL

Plaintiff JANE  DOE hereby demands a trial by jury.

Date: December 6, 2024                          *s/ Mario Iskander*                    /
                                                Mario Iskander, Esq. attorney for
                                                Plaintiff, JANE DOE

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
| STREET ADDRESS: 330 W. Broadway | |
| MAILING ADDRESS: 330 W. Broadway | |
| CITY AND ZIP CODE: San Diego, 92101 | |
| BRANCH NAME: Central | |
| TELEPHONE NUMBER: 619-450-7060 | |

| |
|---|
| PLAINTIFF(S) / PETITIONER(S): JANE DOE |

| |
|---|
| DEFENDANT(S) / RESPONDENT(S): TAMARA ALVAREZ |

| |
|---|
| DOE VS COUNTY OF SAN DIEGO |

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: 24CU026841C |
|---|---|

### CASE ASSIGNED FOR ALL PURPOSES TO:

Judge: MATTHEW C. BRANER            Department: C-60

### COMPLAINT/PETITION FILED: 12/06/2024

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT |
|---|---|---|---|
| Case Management Conference | 06/06/2025 | 10:15 AM | C-60 |

**Case Management Conferences (CMCs) may be conducted virtually or in person.** Anyone wishing to appear remotely should visit the "Appearing for Hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:**. The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
  * **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
  * **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
  * **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

EXHIBIT A

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

EXHIBIT A



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 24CU026841C                    CASE TITLE: Doe vs County of San Diego

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
        **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
        **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), _and_**
        **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

## Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

**Potential Advantages**
- Saves time
- Saves money
- Gives parties more control over the dispute resolution process and outcome
- Preserves or improves relationships

**Potential Disadvantages**
- May take more time and money if ADR does not resolve the dispute
- Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable

## Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference**: A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.